**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Yusuf Salloum (admitted *pro hac vice*)
Ashley L. Surinak (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
patrick.nash@kirkland.com
yusuf.salloum@kirkland.com
ashley.surinak@kirkland.com

*Proposed Co-Counsel to the Debtors and*
*Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Daniel J. Harris, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
dharris@coleschotz.com

*Proposed Co-Counsel to the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>STG LOGISTICS, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 26-10258 (MEH)<br><br>(Jointly Administered) |

**DECLARATION OF JASON KEYES**
**IN SUPPORT OF THE DEBTORS' MOTION**
**FOR ENTRY OF AN ORDER (I) AUTHORIZING AND**
**ESTABLISHING PROCEDURES FOR THE COMPROMISE**
**AND SETTLEMENT OF DE MINIMIS CLAIMS AND (II) APPROVING**
**THE FORM AND MANNER OF THE NOTICE OF SETTLEMENT**

I, Jason Keyes, declare as follows under penalty of perjury:

1. I am a Partner and Managing Director at AlixPartners, LLP ("AlixPartners"), the proposed financial advisor to the above-captioned debtors and debtors in possession (collectively, the "Debtors," and together with its non-debtor subsidiaries and certain

---

[1] The last four digits of Debtor STG Logistics, Inc.'s tax identification number are 8624. A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/STGLogistics. The location of the Debtors' service address in these chapter 11 cases is: 5165 Emerald Parkway, Dublin, Ohio 43017.

affiliates, "STG" or the "Company").

2. As the proposed financial advisor to the Debtors, I am familiar with the Debtors' day-to-day operations, business and financial affairs, and books and records. I submit this declaration (this "Declaration") in support of the *Debtors' Motion for Entry of an Order (I) Authorizing and Establishing Procedures for the Compromise and Settlement of De Minimis Claims and (II) Approving the Form and Manner of the Notice of Settlement* [Docket No. 136] (the "Motion")[2] which seeks entry of an order (the "Order") (a) authorizing and approving the procedures outlined in the Motion (the "Settlement Procedures") to allow the Debtors to compromise and settle both prepetition and postpetition *de minimis* claims, cross-claims, litigation, and causes of action, including prepetition claims threatened or actions brought by various parties (each a "Claimant," and collectively, the "Claimants") against one or more of the Debtors or their estates in judicial, administrative, or other actions or proceedings (collectively, the "De Minimis Claims"), and (b) approving the proposed form and manner of notice that will be provided to affected creditors (the "Settlement Notice"), substantially in the form attached as Exhibit 1 to the Order.

3. Although AlixPartners is expected to be compensated for its work as the Debtors' proposed financial advisor in these chapter 11 cases, I am not being compensated separately for this Declaration or testimony in connection therewith. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge; my review of relevant documents; my discussions with the Debtors' management team, other members of the AlixPartners team, and the Debtors' advisors; my review of information concerning the Debtors' operations, financial

---

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion or the *Declaration of Tyler Holtgreven, Chief Finance Officer of STG Logistics, Inc., in Support of the Debtors' Chapter 11 Petitions and First Day Motion* [Docket No. 33] (the "First Day Declaration") as applicable. The material terms of the Settlement Procedures are set forth in greater detail in the Motion.

2

affairs, and restructuring initiatives; and my views based upon my experience and knowledge. If called as a witness, I could and would testify competently to the facts set forth in this Declaration on that basis. I am above 18 years of age, and I am competent to testify.

### **Background and Qualifications**

4. AlixPartners is a global independent restructuring consulting firm that has a wealth of experience in providing restructuring advisory services, and has assisted and provided strategic advice to debtors, creditors, bondholders, investors, and other entities in numerous chapter 11 cases of similar size and complexity to these chapter 11 cases. I have over fifteen (15) years of restructuring, corporate finance, accounting, and turnaround experience, including business plan development, plan negotiations, and interim management experience. Since joining AlixPartners, I have provided restructuring advice to companies, creditors, and investors, both in chapter 11 and on an out-of-court basis, including over twenty (20) transportation restructurings and turnarounds.

5. The Debtors engaged AlixPartners in July 2025 to advise the Company on strategic alternatives and restructuring initiatives, liquidity forecasting, and management. Over the course of its engagement, AlixPartners has evaluated the Debtors' operations, and has (i) assisted the Debtors in the development of a longer-range business plan, (ii) supported the Debtors in their assessment of strategic alternatives, (iii) provided as-needed resources in support of financing-related workstreams and contingency preparation, and (iv) initiated a comprehensive review and analysis of the Debtors' books and records.

6. AlixPartners, under my supervision, has worked with the Debtors' restructuring professionals and key members of the Debtors' business—including members of the finance, legal, and operations leadership teams—to evaluate and understand the Debtors' cashflows, financial

reporting, and general operations, and has become well-acquainted with the Debtors' capital structure, liquidity needs, and business operations.

### The De Minimis Claims Settlement Procedures

7. In the course of the Debtors' business operations, disputes arise between the Debtors and other parties concerning a variety of matters, including automobile liability, employee liability, and other tort-related disputes. I have discussed the Debtors' typical settlement procedures with the management team, and have become generally familiar with the Debtors' ordinary course settlement process. The Debtors have a well-established process for investigating, evaluating, and attempting to resolve such disputes through settlement, and have done so successfully. Historically, over the past five years, approximately 70% of De Minimis Claims have been resolved in less than twelve months, and those matters have been settled for an average amount of less than $5,000. The Settlement Procedures describe, among other things, the manner in which the Debtors propose to implement certain postpetition guidelines and procedures with respect to the compromise and settlement of the De Minimis Claims asserted against the Debtors and, if applicable, any related cross-claims held by the Debtors. In particular, I believe it is appropriate for the Debtors to continue settlement of De Minimis Claims in the ordinary course for claims that are settled for less than $150,000, which is the same threshold under the DIP Credit Agreement above which the Debtors must secure approval from the Required Lenders (as defined therein). Such settlements are relatively *de minimis* as compared to the Debtors' scale of operations. Additionally, claims that are settled between $150,000 and $500,000 will be subject to additional notice requirements pursuant to the Settlement Procedures.

8. I believe that the Settlement Procedures provide the Debtors and their estates material cost savings by obviating the need to prepare and file a separate motion to approve each

Settlement with service on all creditors.  Likewise, I believe that excepting relatively low-cost Settlements from notice requirements ensures that the Debtors will be able to reach the greatest number of low-cost Settlements—which have a comparatively minor impact on the Debtors' estates—in an expeditious and cost-effective manner and while minimizing any disruption to the business.  Moreover, I believe that the Settlement Procedures will preserve an oversight function for key parties in interest to monitor and receive notice of certain settlement agreements and will not unduly prejudice the rights of creditors or other parties in interest.  I understand that the Ad Hoc Group and the official committee of unsecured creditors are supportive of the Settlement Procedures.

9.      Finally, I believe that the Settlement Procedures are fair and reasonable based on the size and complexity of the Debtors' chapter 11 cases, as well as the types of disputes the Debtors seek to resolve.  I believe that the proposed Settlement Procedures are necessary and appropriate, and in the best interests of the Debtors and their estates and should be approved.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct.

Dated: February 9, 2026                             */s/ Jason Keyes*
                                                      Jason Keyes
                                                     Partner and Managing Director
                                                     AlixPartners LLP